IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | Case No.: 2:06-CR-0108-MHT |
| ) | |
| GARRETT ALBERT DYKES ) | |

## MOTION TO DISMISS FOR LACK OF JURISDICTION

**COMES NOW** the Defendant, Garrett Albert Dykes ("Mr. Dykes"), by his undersigned counsel, Christine Freeman, and, as stipulated and agreed in the conditional Plea Agreement entered in this case, moves this Court to dismiss this case on the grounds that this Court does not have jurisdiction over the charged conduct.

In support of this Motion, Defendant would show the following:

1.  On May 4, 2006, Mr. Dykes waived indictment and consented to criminal proceedings being made by Information. In addition, Mr. Dykes pled guilty to one count of production of child pornography, in violation of 18 U.S.C.§2251(a).

2.  Within the plea agreement in this case, also entered on May 4, 2006, defense counsel and the government agreed that the visual depiction of sexually explicit conduct involving a minor which constituted the offense, was "produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce." However, it was also agreed that the visual depiction produced by Mr. Dykes was "not transported in interstate or foreign commerce, but that the camera and videotape used by the defendant to produce . . . [the] child pornography were made outside of

the State of Alabama, and thus moved in interstate or foreign commerce." (Plea Agreement, D.E. 11, pages 5 - 6.)

3.   Within the plea agreement, the government consented to Mr. Dykes' reservation of the issue, by motion and appeal, of whether or not 18 U.S.C. § 2251(a) is constitutional as applied to this purely intrastate conduct of Mr. Dykes. (Plea Agreement, D.E. 11, page 5.)

4.   Mr. Dykes concedes, as implied in the Plea Agreement, that this question has been addressed and decided against his position by the United States Court of Appeals for the Eleventh Circuit, in *United States v. Maxwell*, 446 F.3d 1210 (11th Cir., 2006). However, he contends that the Eleventh Circuit has misconstrued and misapplied *Gonzalez v. Raich*, 545 U.S. 1 (2005) and the Supreme Court's precedent interpreting Congress' constitutional authority to regulate interstate commerce.[1]

5.   "Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States." *United States v. Bass*, 404 U.S. 336, 349 (1971). To permit federal criminalization of conduct, Congress must establish a basis for authority over that conduct.

6.   The statute of which Mr. Dykes is convicted establishes that a person shall be punished for sexual exploitation of a child when that person has produced any visual depiction of a minor engaged in sexually explicit conduct, "if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means,

---

[1] U.S. Const. Art. 1, § 8, cl. 3: "The Congress shall have the power . . . To regulate commerce with foreign nations, and among the several states, and with the Indian tribes; . . . . And [concluding clause of § 8] To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof."

including by computer." 18 U.S.C.§2251(a) (2006). This statute does not limit its application to productions of child pornography that are intended for sale, or to visual depictions which themselves travel in interstate commerce. Thus, this statute regulates purely noncommercial, intrastate activity.

7. In *United States v. Maxwell,* 446 F.3d 1210 (11th Cir. 2006), the Eleventh Circuit revisited its prior decision that federal criminalization of intrastate possession of child pornography (which had been produced using materials that traveled in interstate commerce) was an unconstitutional exercise of Congress' jurisdiction and authority under the Commerce Clause. *United States v. Maxwell*, 386 F.3d 1042 (11th Cir. 2004). The Maxwell opinion had been vacated by the Supreme Court "with instructions to reconsider [the decision] in light of the Court's recent opinion in *Gonzalez v. Raich,* 545 U.S. 1, 125 S.Ct. 2195 (2005). " 446 F.3d at 1211. Although the opinion in *Gonzalez v. Raich* involved intrastate production of medical marijuana, the Eleventh Circuit concluded that the analysis of the opinion was completely applicable to the situation of intrastate possession of child pornography,[2] and "determine[d] that *Raich* mandates that [the 11th Circuit] reverse [its] prior decision." 446 F.3d at 1211. The Eleventh Circuit concluded that it was "within Congress's authority to regulate *all* intrastate possession of child pornography, not just that which has traveled in interstate commerce or has been produced using materials that have traveled in interstate commerce." 446 F.3d at 1218. (emphasis in original).

8. The Eleventh Circuit cited an observation by the *Gonzalez v. Raich* opinion that "Congress' power to regulate commerce includes the power to prohibit commerce in a particular commodity." 446 F.3d at 1214, quoting 125 S.Ct. at 2207 n. 29. The Eleventh Circuit held that if

---

[2]"We find very little to distinguish constitutionally Maxwell's claim from Raich's. Indeed, much of the Court's analysis could serve as an opinion in this case by simply replacing marijuana and the CSA with child pornography and the CPPA." 446 F.3d at 1216, fn. omitted.

"Congress [can] rationally conclude that the cumulative effect of the conduct by [Mr. Dykes] and his ilk would substantially affect interstate commerce - specifically the interstate commerce Congress is seeking to eliminate," 446 F.3d at 1218, then Mr. Dykes' local, non-commercial production of one tape containing child pornography that never traveled in interstate commerce can be regulated by the Commerce Clause. The Eleventh Circuit explained that if Congress could not regulate such activity, it "would undermine [Congress'] broader regulatory scheme designed to eliminate the market in its entirety," *Id.*, and "the enforcement difficulties that attend distinguishing between purely intrastate and interstate child pornography, (citation omitted), would frustrate Congress's interest in completely eliminating the interstate market for child pornography." *Id.*

9.   However, the Eleventh Circuit has misconstrued and misapplied *Gonzalez v. Raich*, 545 U.S. 1 (2005) and the Supreme Court's precedent interpreting Congress' constitutional authority to regulate interstate commerce. In his concurring opinion in *United States v. Lopez*, 514 U.S. 549, 586-89 (1995), Justice Thomas explained that "the Commerce Clause empowers Congress to regulate the buying and selling of goods and services trafficked across state lines." Neither the history nor structure of the term "commerce" suggests that it "include[s] the mere possession of a good or some purely personal activity that did not involve trade or exchange for value."*Raich,* at 2230. (Thomas, J., dissenting).

10.  The Eleventh Circuit's opinion on remand in *Maxwell* concedes that the intrastate visual depiction does not use the channels of interstate commerce or constitute instrumentalities of or in interstate commerce. The sole basis for arguing federal authority over such conduct is the conclusion that this purely intrastate activity has "a substantial relation to interstate commerce." 446 F.3d at 1212.

11. The single videotape of child pornography produced by Mr. Dykes was never bought or sold or offered for trade; it never crossed state lines; it was never moved from Mr. Dykes' home until Mr. Dykes consented to its seizure by law enforcement. Further, Mr. Dykes did not come into possession of the videotape via any commercial transaction. Thus, Mr. Dykes' single local production of this visual depiction does not qualify as "commerce . . . among the several states," U.S. Const., Art. I, §8, cl.3. See also *Raich,* 125 S. Ct. 2195 at 2229 (Thomas, J., dissenting).

12. The Court in *Maxwell* states that "where Congress has attempted to regulate or eliminate an interstate market, *Raich* grants Congress substantial leeway to regulate purely, intrastate activity (whether economic or not) that it deems to have the capability, in the aggregate, of frustrating the broader regulation of interstate economic activity." *Maxwell*, 446 F.3d at 1215 Relying on the "substantial effects" test in *Wickard v. Filburn*, 317 U.S. 111 (1942), the majority opinion in *Raich* and the panel opinion in *Maxwell* reason that Congress' Commerce Clause authority would extend to purely non-commercial, personal, intrastate activity like Mr. Dyke's because the hypothetical aggregate effect of his conduct allegedly frustrates Congress' attempts to eliminate through regulation, a larger, illicit interstate market for child pornography.

13. However, the reality before this Court does not meet this hypothetical construct. No conduct of Mr. Dykes did or would frustrate Congress' efforts to eradicate the interstate market for child pornography. Mr. Dyke's video tape never left his home. It neither entered any market, nor sparked a demand for an interstate market for such depictions. Just as federal prosecution of every convenient store robbery is not essential to regulation of use of interstate highways to commit crimes, so is federal prosecution of this conduct unnecessary and not essential to the larger regulatory scheme. The facts of this case simply do not support the "aggregate harm" hypothesis. Federal

criminal prosecution of this conduct is not "necessary" to carry out Congress' authority to regulate interstate commerce.

14.     The Supreme Court's opinion in *Wickard* extended Commerce Clause authority to multiple individuals' mass production of a product (wheat) to prevent the frustration of national quotas that had been set on production. Thus,"*Wickard* did not extend Commerce Clause authority to something as modest as [one individual's home production of a single item]." *Raich,* 125 S. Ct. 2195 at 2225 (O'Connor, J., dissenting). Further, "*Wickard* did not hold or imply that small-scale production of commodities is always economic, and automatically within Congress' reach." *Id.*, at 2225-26. In addition, the application of the *Wickard* aggregation principle would be erroneous in Mr. Dyke's case because "in those [previous] cases, [including *Raich*] where [the U.S. Supreme Court has] sustained federal regulation of intrastate activity based upon the activity's substantial [or aggregate] effects on interstate commerce, the activity in question has been some sort of economic endeavor." *United States v. Morrison,* 529 U.S. 598, 611 (2000). As noted above, the evidence stipulated to by the parties establishes that Mr. Dykes' production of one videotape containing child pornography was not an economic endeavor. Thus, federal criminal prosecution of this conduct is not a "proper" way to carry out Congress' authority to regulate interstate commerce. See *U.S. v. Sabri*, 326 F.3d 937, 954 - 956 (8th Cir. 2003) (Bye, J., dissenting).

15.     In *Maxwell*, the Eleventh Circuit noted prior legislative findings made by Congress, of a connection between local possession of child pornography and the national market when it enacted another statute regulating the possession and production of child pornography, 18 U.S.C. §2252A. The Court in *Maxwell* stated:

> Congress indicated how intrastate possession of child pornography( or any child pornography for that matter ) affects the larger market, [stating that] the existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers who prey on children . . . and prohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children . . . .

Maxwell, 446 F.3d at 1217. However, these factual assertions by Congress "amounted to nothing more than a legislative insistence that the regulation of [child pornography] must be absolute. They are asserted without any supporting evidence-descriptive, statistical, or otherwise. Simply because Congress may conclude a particular activity substantially affects interstate commerce does not necessarily make it so."*Raich,* 125 S. Ct. 2195 at 2227 (O'Connor, J., dissenting) (citing *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.,* 452 U.S. 264, 311 (1981)(Rehnquist, J., concurring in judgment). Simply because Congress wishes to eliminate a certain type of visual depiction does not give it authority to do so. While the Supreme Court has also approved an earlier finding that "the most expeditious" method of law enforcement "to dry up the market for this material" is "by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product," *New York v. Ferber*, 458 U.S. 747, 760 (1982), this is not Mr. Dykes' conduct.

16.    Mr. Dykes' single home production of one video tape visual depiction does not qualify as commerce. The tape was produced for non-commercial purposes, was never sold, was never viewed or distributed to anyone else, and never even left Mr. Dykes' home. All of the evidence shows that the tape never entered any market, either intrastate market or interstate. There is no evidence supporting a finding that Mr. Dykes' conduct substantially affected interstate commerce.

17.    The "federalization" of crime threatens the "sensitive relation" between state and federal jurisdictions, *U.S. v. Lopez*, 514 U.S. 549, 561 (1995).  This trend is "taxing the [federal] Judiciary's resources," (Hon. William H. Rehnquist, The 1998 Year-End Report of the Federal Judiciary, Third Branch, Jan. 1999 at 1, 2 (quoted at n. 243, Comment, 55 Am. U. L. Rev. 543 (December 2005)) These costs to the federal justice system include an increase in time spent on federal criminal trial dockets and a quadrupling of the federal prison population.  Comment, *supra,* at footnotes 244 - 247.  Moreover, the illusion of a federal "solution" to certain crimes interferes with effective law enforcement, by diverting resources.  Comment, *supra*, at footnotes 248 - 249.

18.    Although contrary to the most recent Eleventh Circuit opinion addressing this issue, Mr. Dykes maintains that his conduct does not come within the purview of Congress' Commerce Clause authority and thus requests this Court to grant this Motion to Dismiss.  This Court has no proper jurisdiction over this conduct.  Mr. Dykes' conduct is properly solely the subject of state prosecution, which in fact is presently pending.

**WHEREFORE**, for the foregoing reasons, Defendant respectfully requests that this Court rule that it lacks jurisdiction over this prosecution and grants this Motion to dismiss this action.

Respectfully submitted,
**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Garett A. Dykes
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

**CERTIFICATE OF SERVICE**

  I hereby certify that on July 12, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Susan Redmond, Esquire, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

            **s/Christine A. Freeman**
            **CHRISTINE A. FREEMAN**
            **TN BAR NO.: 11892**
            Attorney for Garett A. Dykes
            Federal Defenders
            Middle District of Alabama
            201 Monroe Street, Suite 407
            Montgomery, AL 36104
            TEL: (334) 834-2099
            FAX: (334) 834-0353
            E-Mail: Christine_Freeman@fd.org